IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 1:05-cr-139 |
| Plaintiff, : | |
| : | District Judge Susan J. Dlott |
| v. : | |
| : | ORDER |
| LEIF D. ROZIN, et al., : | |
| : | |
| Defendants : | |
| : | |

      This matter comes before the Court on: Defendant Alan W. Koehler's Motion to Dismiss the Indictment for a Violation of His Due Process Rights (doc. 126) (hereinafter "Motion to Dismiss"); Defendant Leif Rozin's Joinder In Defendant Koehler's Motion to Dismiss the Indictment for Violation of Due Process Rights (doc. 128); Defendant Milton Liss's Motion to Adopt Defendant Koehler's Motion to Dismiss the Indictment for a Violation of His Due Process Rights (doc. 135); Defendant Rozin's Supplement to Motion to Dismiss for Violation of Due Process Rights and for Pre-Indictment Delay (doc. 144); Government's Response to Defendants' Motion to Dismiss Indictment for Violation of Due Process Law (doc. 147); and Defendant Rozin's Reply to Government's Response to Defendants' Motions to Dismiss Indictment Due to Due Process Violations (doc. 150).

      The Court **GRANTS** Defendant Liss's Motion to Adopt Defendant Koehler's Motion (doc. 135) and considers the now joint Motion to Dismiss below.  For the reasons that follow, the Court **DENIES** Defendants' Motion to Dismiss (doc. 126).

**I.     BACKGROUND**

Defendants Alan Koehler, Leif D. Rozin, Bruce Cohen, Burton Kallick, and Milton Liss were charged with various counts of conspiracy to defraud the United States and impede and impair the Internal Revenue Service ("IRS") in violation of 18 U.S.C. § 371 (Count 1), subscribing a false tax return in violation of 26 U.S.C. § 7206(1) (Count 2), aiding and assisting in the preparation and filing of a false tax return in violation of 26 U.S.C. § 7206(1) (Counts 3-5), and attempted tax evasion in violation of 26 U.S.C. § 7201 (Counts 6 and 7). (See Indictment, doc. 1.) Rozin is charged under Counts 1, 2, and 6; Kallick was charged under Counts 1, 3, and 7, but has since been dismissed from the suit due to his death; and Koehler, Cohen, and Liss are charged under Counts 1, 3, 4, and 5. Cohen has since pleaded guilty to Count 1.

In or around 2000, the Government began investigating the business dealings of Rozin, Inc., of which Rozin and Kallick were co-owners. The Government initially suspected that Rozin and Kallick had received kickbacks that they had failed to report to the IRS, but it quickly shifted the focus of its investigation to the nature of an unusually large insurance deduction that appeared on Rozin, Inc.'s corporate tax return for the year 1998. The investigation eventually led the Government to suspect that Rozin and Kallick had engaged in a scheme to defraud the IRS with Defendants Milton Liss and Bruce Cohen, who were at that time licensed insurance agents, and Alan Koehler, who served as in-house counsel for Rozin, Inc. Essentially, the Government alleges that Defendants Rozin and Kallick purchased various loss of income ("LOI") insurance plans from Liss and Cohen for the purpose of claiming a false tax deduction.

After an approximately five-year investigation into these matters, the Government obtained an indictment against the Defendants on October 5, 2005.

With regard to the charges against them, Defendants Rozin and Koehler have indicated plans to assert a reliance/due diligence defense. Specifically, Rozin and Koehler claim that they did not act willfully because prior to purchasing the LOI policies and claiming that purchase as a tax deduction, they were provided with documentation from the IRS tax file (hereinafter "the Savage file" or "Savage's file") of another individual, Christopher Savage, who attempted to claim a similar deduction.[1] In December 1995, Savage had purchased an LOI insurance policy, similar to the policies purchased by Rozin and Kallick, from Caduceus Life Insurance Company ("CLIC"). Savage paid a $100,000 premium on the policy and subsequently claimed that premium as a deduction on his 1995 individual income tax return. In May 1997, the IRS notified Savage that it was disallowing his deduction for the $100,000 premium and that as a result Savage owed a deficiency of $34,827. Savage then filed a petition in Tax Court to dispute the disallowance.[2] In April 1998, the IRS reached an out of court settlement with Savage, pursuant to which Savage agreed to pay a deficiency of $26,845 rather than $34,827. According to the Government:

> This settlement reflects the fact that even if the IRS allowed [] Savage's deduction for his LOI policy premium, the Alternative Minimum Tax ("AMT"), which he had failed to include on his filed return, would be triggered and would cause a deficiency not dissimilar from the deficiency caused by the original disallowance. Thus, because the AMT calculation for Mr. Savage could not be disputed, and rendered the amount at issue somewhat de minimus, a settlement was reached in

---

[1] At the May 14-16, 2007 evidentiary hearing, Defendant Cohen testified that in marketing the LOI policies to Rozin and Kallick he discussed Savage's deduction with them. (Tr. 478.)

[2] Savage's tax appeal is hereinafter referred to as "the Savage case."

3

> which the IRS agreed not to disallow the deduction for the LOI premium if []
> Savage paid the AMT deficiency.

(Doc. 147 at 4.)

The <u>Savage</u> appeal is related to the instant case because, according to the Government, Defendant Cohen was acting as a middleman promoter for CLIC, the same company that sold LOI policies to Savage.  Cohen received certain promotional materials from CLIC that contained correspondence between the attorney for Savage and the IRS appeals officer assigned to Savage's case.  Defendants produced copies of these promotional materials to the IRS agents and Department of Justice prosecution team assigned to this case.  Accordingly, they should be in possession of those materials.  Nonetheless, Defendants now seek access to the IRS's file on Savage, claiming that it contains evidence suggesting that the IRS allowed Savage to claim a deduction for similar LOI policies as those purchased by Rozin and Kallick.  At an evidentiary hearing held during May 14-16, 2007, Defendant Koehler requested that the Government produce the <u>Savage</u> file and questioned IRS Special Agent Douglas Ryan about his knowledge of the file.  Agent Ryan testified that early in his investigation of Defendants, at an August 19, 2001 meeting, attorneys for Defendant Rozin give him documents from the <u>Savage</u> case.  (Tr. 380-81.) Subsequently, Agent Ryan contacted the IRS office in Boston that had handled Savage's appeal in an attempt to locate Savage's records.  However, according to Agent Ryan, the person he spoke with about getting the records indicated that the file was unavailable because it had either been placed in storage or destroyed.  (Tr. 381-82.)

During the May 2007 hearing, Department of Justice Attorney Richard Rolwing represented to the Court that the <u>Savage</u> file had been destroyed and therefore the Government had not been able to obtain it.  Rolwing also indicated that the Government had recently obtained

from Savage all of his files on the matter and that the Government would put those files together and turn them over to the Defendants. (Tr. 95.) Finally, Rolwing stated that he would attempt to ascertain the date on which the IRS had destroyed the Savage file. The Government maintains that these documents are irrelevant to the Koehler's, Rozin's, and Liss's defense, but it nonetheless agreed to provide the Defendants with the documents that it could recover. (See doc. 147, at 6-7 n. 4; Tr. 106-07.)

Following the evidentiary hearing, the Government advised defense counsel in a letter dated July 26, 2007 that the IRS had destroyed the Savage file in approximately October 2005. However, the Government had recovered some of the documents related to Savage's appeal and settlement from Savage and his attorney pursuant to grand jury subpoenas. According to the Government, the Savage file would have contained many of those documents. Therefore, pursuant to Defendants' requests, the Government turned the documents over to defense counsel in the instant case. Around the same time, Koehler filed his motion to dismiss alleging that the Government violated his due process rights by failing to preserve the Savage file. Subsequently, Defendants Liss and Rozin filed respectively a motion and notice of joinder in Koehler's motion.

## II.  MOTION TO DISMISS DUE TO DUE PROCESS VIOLATION

Defendants claim that the Savage file is important for several reasons. First, Defendants claim the file is relevant to a defense of reliance and to show that they did not act willfully. Specifically, Defendants claim that based at least in part on their reliance upon the Savage case, they formed a good faith belief that Rozin and Kallick's LOI policies were deductible. Next, Defendants claim that the materials in the Savage file have important impeachment value with regard to the testimony of Defendant Cohen, who has already entered into a plea agreement in

this case and is expected to testify at trial. Specifically, Defendants argue that they must access Savage's official IRS file to determine whether any of the Savage-related documents that Cohen showed to Defendants when marketing the LOI policies had been altered.

Further, Defendants claim that the Government was on notice as early at August 2001 that Defendants claimed reliance on the Savage case and that subsequently the Government had a duty to preserve the Savage file. Defendants therefore seek an evidentiary hearing to demonstrate that the records contained materially exculpatory evidence. The Government responds that an evidentiary hearing is unnecessary because the Defendants did not previously have access to the Savage file and therefore cannot claim reliance upon the documents contained therein. Additionally, the Government maintains that Defendants' speculation that Cohen may have altered some of the documents pertaining to Savage's appeal prior to showing those documents to Defendants is pure speculation.

Recognizing that a defendant's right to a complete defense necessarily encompasses "'what might loosely be called the area of constitutionally guaranteed access to evidence,'" California v. Trombetta, 467 U.S. 479, 485 (1984) (quoting United States v. Valenzuela-Bernal, 458 U.S. 858, 867 (1982)), the Supreme Court has determined that the Government's failure to preserve relevant evidence may under certain circumstances amount to a violation of the defendant's due process rights. See id. The Government does not have "an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." Arizona v. Youngblood, 488 U.S. 51, 58 (1988). Accordingly, "[s]eparate tests are applied to determine whether the government's failure to preserve evidence rises to the level of a due process violation in cases where material

exculpatory evidence is not accessible versus cases where 'potentially useful' evidence is not accessible." United States v. Wright, 260 F.3d 568, 570 (6th Cir. 2001) (internal citations omitted).

The destruction of materially exculpatory evidence violates a defendant's due process rights where: (1) the exculpatory value of the evidence was apparent before it was destroyed and (2) the evidence is of "such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Trombetta, 467 U.S. at 488-89; see also Treesh v. Bagley, No. 1:02 CV 462, 2007 WL 1039081, at *36 (N.D. Ohio Mar. 31, 2007). "The destruction of material exculpatory evidence violates due process regardless of whether the government acted in bad faith." Wright, 260 F.3d at 571. In contrast, where the evidence is only potentially useful rather than materially exculpatory, a defendant must additionally show bad faith on the part of the Government in order to demonstrate a constitutional violation. Youngblood, 488 U.S. at 58; see also Treesh, No. 1:02 CV 462, 2007 WL 1039081, at *36. "The presence or absence of bad faith by the [government actor] for the purposes of the Due Process Clause must necessarily turn on the [government actor's] knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." Youngblood, 488 U.S. at 56 n. *. Proof of negligence, even gross negligence, is insufficient to establish bad faith. Wright, 260 F.3d at 571.

In the instant case, Defendants do not dispute that the Government has provided them with records of correspondence and other documents that would have been included in Savage's file. Accordingly, many of the documents Defendants seek are available, and indeed have been provided to them, through an alternative source. However, Defendants contend that the file would also have contained internal memoranda of the Appeals Officer assigned to the case, and

that such memoranda would have included a description of "the IRS's position on the deductibility issue, and a detailed statement of the reasons for that position, and the factual and legal bases for that statement." (Doc. 128 at 3.)

Turning first to the question of whether the Savage file contained materially exculpatory evidence, Defendant Rozin claims that Savage's file contained such a memorandum and that the memorandum stated "the Service's reasons for agreeing to [Savage's position on the appeal], mainly that the LOI policies were a valid and deductible insurance expense." (Doc. 128 at 3.) However, as Rozin cites no basis for this claim, the Court finds his assertion to be nothing more than an assumption. Without any supporting evidence, Defendants' argument that the internal memorandum would support their good faith reliance on Cohen's representation as to the deductibility of the policies is purely speculative.

Moreover, Defendants have not shown that the contents of the Savage file are relevant, let alone materially related, to their reliance defense. To the contrary, because a defendant's good faith in a criminal tax case is judged by a subjective standard, the only documents relevant to the reliance defense are the documents actually received and reviewed by the defendant during the course of the allegedly criminal conduct. See Cheek v. United States, 498 U.S. 192, 201-03 (1991) ("We thus disagree with the Court of Appeals' requirement that a claimed good-faith belief must be objectively reasonable if it is to be considered as possibly negating the Government's evidence purporting to show a defendant's awareness of the legal duty at issue.").

There is no evidence, nor any indication, that Defendants ever saw any internal IRS memoranda. As they were not privy to any internal memoranda when purchasing the LOI policies and filing the targeted tax returns, they cannot claim that they relied upon any

information or opinion that may have been contained therein. In the end, the question the jury must determine is whether Defendants proceeded under the good faith belief that their actions were lawful based on information within their knowledge when they purchased the LOI policies and attempted to claim an allegedly improper deduction for the premiums paid on those policies. Such information would include Cohen's representations and any documents that Defendants actually received and reviewed. It would not include internal IRS memoranda that Defendants do not claim to have ever seen.

Defendants next argue that the contents of the Savage file are materially exculpatory in that they may be useful in impeaching Cohen's testimony. Defendants suggest that Cohen may have altered documents from the Savage case before showing them to Defendants. Again, Defendants point to no evidence to support this assertion. Accordingly, the impeachment value of the documents included in Savage's IRS file is purely speculative. Additionally, even if Defendants were to demonstrate that Cohen altered certain documents pertaining to the Savage case in order to bolster his opinion that the IRS had determined LOI policies to be deductible, this fact would be of little probative value. As discussed above, the question is whether Defendants relied in good faith on the representations Cohen made to them, regardless of whether these representations were factually inaccurate.

Accordingly, while Defendants have shown that they asserted reliance on the Savage case as early as August 2001, Defendants fail to show that the IRS's file on Savage, let alone any internal memoranda that may have been part of that file, contained materially exculpatory information that was apparent prior to the destruction of the file. At most, Defendants have shown only that the discarded contents of Savage's file would have been potentially useful.

Therefore, to demonstrate a violation of their due process rights, Defendants must present evidence that the Government acted in bad faith. Elaborating on this standard, the Sixth Circuit has indicated that:

> So long as government officials do not destroy evidence "in a calculated effort to circumvent the disclosure requirements established by Brady v. Maryland and its progeny," so long as they act "in good faith and in accord with their normal practice," and so long as "[t]he record contains no allegation of official animus towards [the criminal defendant] or of a conscious effort to suppress exculpatory evidence," their actions do not offend the Due Process Clause.

United States v. Generett, 149 F. App'x. 432, 434 (6th Cir. 2005) (quoting Trombetta, 467 U.S. at 488) (internal citations omitted). Here, there is no evidence to contradict the Government's assertion that the IRS destroyed Savage's file in accordance with the standard IRS document retention policy. Nor is there any reason to believe that the Government acted with animus or in an attempt to circumvent the disclosure requirements of Brady v. Maryland, 373 U.S. 83 (1963). Defendants' request for an evidentiary hearing and motion to dismiss the indictment are hereby denied.

## III.  MOTION FOR RECONSIDERATION

With his memorandum joining Defendant Koehler's Motion to Dismiss (doc. 128) and his Reply to the Governments' Response to Defendants' Motion to Dismiss (doc. 150), Defendant Rozin moves for reconsideration of the Court's Order Denying Defendants Burton Kallick and Leif Rozin's Joint Motion to Dismiss Indictment on the Basis of Pre-Indictment Delay. Rozin argues that the Court should consider the issues raised in regard to the Savage file in determining whether the Defendants suffered prejudice as a result of any pre-indictment delay. The Court has reviewed the evidence and finds no basis to alter its prior order denying

Defendants' motion to dismiss due to pre-indictment delay.  Accordingly, Defendant Rozin's motion for reconsideration is denied.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant Liss's Motion to Adopt Defendant Koehler's Motion to Dismiss (doc. 135), **DENIES** Defendants' Motion To Dismiss (doc. 126), and  **DENIES** Defendant Rozin's motion for reconsideration of the Court's Order Denying Defendants Burton Kallick and Leif Rozin's Joint Motion to Dismiss Indictment on the Basis of Pre-Indictment Delay (docs. 128, 150).

IT IS SO ORDERED.

    s/Susan J. Dlott
Susan J. Dlott
United States District Judge